The STATE of Ohio, Appellee,

v.

BYRD, Appellant.

[Cite as *State v. Byrd,* 160 Ohio App.3d 538, 2005-Ohio-1902.]

Court of Appeals of Ohio,
Second District, Montgomery County.

No. 20580.

Decided April 15, 2005.

Deirdre E. Logan, Montgomery County Chief Prosecuting Attorney, for appellee.

Stacey J. Brown, Assistant Public Defender, for appellant.

DONOVAN, Judge.

{¶ 1} Defendant-appellant, Donald D. Byrd, appeals from his conviction and sentence for one count of assault, pursuant to R.C. 2903.13(A) and (C)(1), a misdemeanor of the first degree. This matter was tried to the court on May 19, 2004, and after being found guilty of assault, Byrd was sentenced to 180 days in jail and given credit for time served prior to trial. Execution of the sentence was stayed pending the outcome of this appeal. Byrd was originally charged with one count of domestic violence and one count of assault, but the charge of domestic violence was dismissed pursuant to Crim.R. 29 at the close of the state's evidence. For the following reasons, we reverse the decision of the trial court and remand the cause for further proceedings in accordance with this opinion.

I

{¶ 2} On February 17, 2004, police officers were dispatched to a residence in Dayton, Ohio, in response to a 911 call from a female who allegedly had witnessed Byrd beating his girlfriend, Idela T. Prather, in front of his home. Byrd, who

testified at trial, stated that he and Prather were initially arguing about money when Prather decided that she would take her children and walk to her father's residence a short distance from Byrd's residence.

{¶ 3} Byrd testified that he had asked her to take his vehicle rather than walk, but Prather had refused. Byrd stated that he had wanted her to drive because it was cold outside and she was pregnant and suffering from various health problems. When Byrd tried to stop Prather from leaving, a physical altercation began. While there is conflicting testimony as to who started the fight, the evidence demonstrates that Prather was the primary aggressor. Prather allegedly struck Byrd several times and also bit his hand. Byrd testified that he had bitten Prather on her back but only in an attempt to force her to release his hand.

{¶ 4} Dayton Police Officer Alan Kraker testified that when he responded to the scene, he questioned both Byrd and Prather. Officer Kraker testified that both parties had related the same version of events. Although Prather did not testify at trial, Officer Kraker testified that Prather had admitted to him that she had struck Byrd several times and had bitten his hand, before Byrd bit her. Because Kraker and his partner believed that Prather had been the primary aggressor, they had intended to arrest her for domestic violence. Byrd requested that she not be arrested due to her pregnancy, and the officers arrested him because the domestic-violence protocol necessitated that an arrest be made.

{¶ 5} After a trial to the bench, Byrd was found guilty on one count of assault and sentenced to 180 days in jail. It is from this judgment that Byrd now appeals.

## II

{¶ 6} Byrd's first assignment of error is as follows:

{¶ 7} "The trial court erred by permitting hearsay testimony against the defendant, denying the defendant his Sixth Amendment right to confront witnesses against him."

{¶ 8} In his first assignment, Byrd contends that the trial court erred by allowing the state to introduce hearsay testimony on two occasions. The first instance Byrd complains of occurred when the court permitted the state to enter the recording of the 911 call into evidence despite the fact that the female caller was not called to testify concerning the authenticity and accuracy of the tape. Byrd also argues that the trial court erred by allowing Officer Kraker to testify regarding statements made by Prather. Byrd points out that he was the only person who offered direct testimony with respect to the events that formed the basis of the charges brought against him.

{¶ 9} Essentially, Byrd argues that the state based its entire case on hearsay testimony, and thus, he was denied the right to cross-examine the witnesses against him in direct contravention of his right to confront his accusers guaranteed by the Sixth Amendment to the United States Constitution. The Confrontation Clause states that "[i]n all criminal prosecutions, the accused shall enjoy the right * * * to be confronted with the witnesses against him."

{¶ 10} In support of his contention, Byrd cites *Crawford v. Washington* (2004), 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177, in which the United States Supreme Court held that a testimonial statement from a witness who does not appear at trial is inadmissible against the accused unless the witness is unavailable to testify and the defendant had a prior opportunity to cross-examine the witness. In *Crawford,* a tape-recorded statement was given to the police by the defendant's wife, describing the stabbing for which the defendant was charged. Pursuant to the state's marital privilege, the defendant's wife did not testify at trial, so the defendant had no opportunity to cross-examine her. The taped statement, however, was admitted at trial, over defendant's objections, because the trial court determined that the statement had "particularized guarantees of trustworthiness." *Crawford,* supra, citing *Ohio v. Roberts* (1980), 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597.

{¶ 11} Prior to the decision announced in *Crawford,* the United States Supreme Court held in *Roberts* that an unavailable witness's out-of-court statement could be admitted against the accused if the statement had adequate indicia of reliability. *Roberts,* supra, 448 U.S. at 66, 100 S.Ct. 2531, 65 L.Ed.2d 597. The out-of-court statement was considered to possess adequate indicia of reliability if it either fell within a "firmly rooted hearsay exception" or exhibited "particular guarantees of trustworthiness." Id.

{¶ 12} "Where testimonial statements are involved, we do not think the Framers meant to leave the Sixth Amendment's protection to the vagaries of the rules of evidence, much less to amorphous notions of 'reliability.'" *Crawford,* supra, 541 U.S. at 61, 124 S.Ct. 1354, 158 L.Ed.2d 177. The threshold determination then becomes whether the hearsay statements in question are classified as "testimonial." Although, in *Crawford,* the Supreme Court explicitly abstained from providing an exhaustive definition of "testimonial," it did provide the three following "formulations of [the] core class of testimonial statements." Id. at 52, 124 S.Ct. 1354, 158 L.Ed.2d 177.

{¶ 13} " '[1] In the first, testimonial statements consist of ex parte in-court testimony or its functional equivalent—that is, material such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine or similar pre-trial statements that declarants would reasonably expect to be used prosecutorially.

{¶ 14} " '[2] The second formulation described testimonial statements as consisting of extrajudicial statements contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions.

{¶ 15} " '[3] Finally, the third explained that testimonial statements are those made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial.' " *State v. Stahl,* Summit App. No. 22261, 2005-Ohio-1137, 2005 WL 602687, citing *Horton v. Allen* (C.A.1, 2004), 370 F.3d 75, 84.

■ {¶ 16} At a minimum, the term "testimonial" applies to testimony at a preliminary hearing, before a grand jury, or at a former trial and to responses to police interrogations. *Crawford,* 541 U.S. at 68, 124 S.Ct. 1354, 158 L.Ed.2d 177.

## A. 911 Call

■ {¶ 17} As we recently noted in *State v. Williams,* Montgomery App. No. 20368, 2005-Ohio-213, 2005 WL 120054, a New York trial court ruled that a 911 emergency call made by a domestic-assault victim is not testimonial in nature and, provided it meets the excited-utterance exception to the hearsay rule, it may be admissible against the defendant without violating the Sixth Amendment confrontation rights of the accused. *State v. Moscat* (2004), 3 Misc.3d 739, 777 N.Y.S.2d 875.

{¶ 18} In *Moscat,* the court stated:

{¶ 19} "The 911 call—usually, a hurried and panicked conversation between an injured victim and a police telephone operator—is simply *not* equivalent to a formal pretrial examination by a justice of the peace in Reformation England. If anything, it is the electronically augmented equivalent of a loud cry for help. The Confrontation Clause was not directed at such a cry.

{¶ 20} "Moreover, a 911 call can usually be seen as part of the criminal incident itself, rather than as part of the prosecution that follows. Many 911 calls are made while an assault or homicide is still progress. Most other 911 calls are made in the immediate aftermath of the crime. Indeed, the reason why a 911 call can qualify as an 'excited utterance' exempt from the rules of evidence barring hearsay is that very little time has passed between the exciting event itself and the call for help; the 911 call qualifies as an excited utterance precisely because there has been no opportunity for the caller to reflect and falsify her (or his) account of events." *Moscat,* 3 Misc.3d at 746, 777 N.Y.S.2d 875.

{¶ 21} With respect to statements made by the female caller during the 911 call, we conclude that the trial court properly admitted this hearsay evidence (the 911 call was offered by the state to prove the truth of what the caller had said) under the hearsay exception for excited utterances. Evid.R. 803(2). All of the

foundational requirements for admission of this 911 call as an excited utterance were satisfied in the present case: the existence of a startling or shocking event, the declarant's possessing firsthand knowledge of that event and being under the stress or excitement caused by the event when her statement was made, and the declarant's statement that relates to that startling event. Weissenberger, Ohio Evidence (2004) 450–460. Lastly, under Evid.R. 803(2), the availability of the declarant is immaterial. Thus, it was of no consequence that the state did not call the female witness to testify and face cross-examination from the accused.

### B. Statements Made by Idela Prather to Officer Kraker

{¶ 22} "Given its superior vantage, the trial court enjoys broad discretion in the admission and exclusion of evidence and will not be reversed absent a clear abuse which had materially prejudiced an objecting party." *Barbeck v. Twinsburg Twp.* (1992), 73 Ohio App.3d 587, 592, 597 N.E.2d 1204. Abuse of discretion connotes more than an error of law or judgment; it implies that the trial court's attitude is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 450 N.E.2d 1140.

{¶ 23} After a thorough review of the record, we conclude that the statements made by Prather to Officer Kraker, while consisting of a combination of hearsay and hearsay exceptions, nevertheless deprived him of his right to confrontation. Prather made the statements incriminating Byrd during an interview conducted by Officer Kraker after he arrived at the location where the alleged criminal conduct took place. Prather did not testify at trial, but over strenuous objection from defense counsel, the court allowed the state to elicit testimony from Officer Kraker with respect to the statements made by Prather during the interview.

{¶ 24} The statements made by Prather that were offered at trial against Byrd are clearly testimonial in nature and of the type contemplated in *Crawford,* supra, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177. Because Prather did not testify at trial, Byrd was unable to cross-examine her regarding the statements she made to Officer Kraker. Byrd is entirely correct in asserting that a reasonable person would anticipate that the alleged statements made by Prather would be used against him in an investigation and prosecution. In allowing Officer Kraker to testify as to those statements, Byrd was denied the right to face his accusers, which is granted by the Sixth Amendment's Confrontation Clause. In permitting the state to elicit the aforementioned hearsay testimony at trial, the court abused its discretion to the material prejudice of Byrd.

{¶ 25} Thus, Byrd's first assignment of error is overruled in part and sustained in part.

{¶ 26} Byrd's second assignment of error is as follows:

{¶ 27} "The trial court erred by not granting Mr. Byrd's motion for acquittal because it was against the manifest weight of the evidence that he committed domestic violence."

{¶ 28} Given our disposition with respect to the above assignment, we need not address Byrd's second assignment.

{¶ 29} The judgment of the trial court is reversed, and this matter is remanded to that court for further proceedings in accordance with law and consistent with this opinion.

Judgment reversed<br>and cause remanded.

WOLFF and FREDERICK N. YOUNG, JJ., concur.

Hon. FREDERICK N. YOUNG, J., sitting by assignment of the Chief Justice of the Supreme Court of Ohio.