[Cite as *State v. McDaniel*, 2011-Ohio-6326.]

IN THE COURT OF APPEALS OF MONTGOMERY COUNTY, OHIO

STATE OF OHIO                          :

    Plaintiff-Appellee          :C.A. CASE NO. 24423

vs.                                    :          T.C. CASE NO. 10CRB9666

CHARLES A. MC DANIEL, JR.              :          (Criminal Appeal from
                                                    Municipal Court)

    Defendant-Appellant         :

         . . . . . . . . .

# O P I N I O N

**Rendered on the 9ᵗʰ day of December, 2011.**

         . . . . . . . . .

**John J. Danish, City Attorney; Stephanie L. Cook, Chief Prosecutor; Troy B. Daniels, Asst. Pros. Attorney, Atty. Reg. No. 0084957, 335 W. Third Street, Rm. 372, Dayton, OH 45402**
    **Attorneys for Plaintiff-Appellee**

**Timothy L. Carlin, Atty. Reg. No. 0085457, 765 Troy Street, Dayton, OH 45404**
    **Attorney for Defendant-Appellant**

         . . . . . . . . .

**GRADY, P.J.:**

{¶ 1} On September 19, 2010, two neighbors of Defendant, Charles McDaniel, called 911 to report a domestic disturbance at Defendant's residence at 208 Huron Avenue in Dayton. The callers reported that a seven year old girl who was sitting inside a Buick parked in front of Defendant's home was very upset and crying and had said that her dad had killed

her mom. The callers also reported that they could see a bald, African-American male wearing a tank top who was pacing back and forth inside the home, like he was crazy.

{¶ 2}  Several officers were dispatched to Defendant's home on a domestic violence call involving a possible shooting. Three officers went to the front of the home and three went to the back. One of the officers spoke to the girl sitting in the Buick. The girl said that her mom and dad were inside fighting and that she was afraid for her life. As officers approached the front door they saw Defendant inside the home pacing back and forth. He had a metal cylindrical object in his hand, similar to a pipe or the barrel of a shotgun.

{¶ 3}  When Defendant noticed the officers approach he moved to the back of the house, out of view. Defendant tried to exit out the back door but was confronted by Officer Clinger, who ordered him to the ground. Defendant instead went back inside the home and shut the door. Meanwhile, three officers had entered the home via the front door because they feared there might be an injured victim inside. When Defendant  re-entered and went to the front of the home, he was taken into custody by the officers.

{¶ 4}  As Defendant was being removed from the home, Lamonica Smithson emerged from a back bedroom. She was crying hysterically, out of breath, and had difficulty speaking. Smithson was topless except for a shirt she held over her chest. Smithson stated that Defendant had tried to kill her and that she was afraid for her life. Smithson had scratch marks on her chest, neck, back and face. She was bleeding from the back of her head, had a lump on the left side of her head, and  she complained of an injury to her leg. Photographs taken a few days later show severe bruising to Smithson's forearms, right thigh, and back.

{¶ 5}  The officers observed shattered glass strewn about the inside of the home and

items that were thrown to the floor. A metal pipe was found near the back door through which Defendant had tried to exit. Defendant was arrested for domestic violence. While being escorted to a police cruiser, Defendant asked officers if they could work something out so he didn't have to go to jail.

**{¶ 6}** Defendant was charged by complaint in Dayton Municipal Court with domestic violence, R.C. 2919.25(A), and assault, R.C. 2903.13(A). On November 3, 2010, the case proceeded to a bench trial. The trial court found Defendant guilty of both charges. The trial court merged the offenses and sentenced Defendant only on the domestic violence charge to one hundred and eighty days in jail, with one hundred and eighteen days suspended and credit given for two days, leaving a balance of sixty days to serve. Defendant was also placed on community control for two years and fined one thousand dollars, with six hundred dollars being suspended. The trial court stayed execution of Defendant's sentence pending this appeal.

**{¶ 7}** Defendant timely appealed to this court from his conviction and sentence. Defendant's appellate counsel filed an *Anders* brief, *Anders v. California* (1967), 386 U.S. 738, 87 S.Ct. 1396, 19 L.Ed.2D 493, stating that he could find no meritorious issues for appellate review. We notified Defendant of his appellate counsel's representations and afforded him ample time to file a pro se brief. None has been received. This case is now before us for our independent review of the record. *Penson v. Ohio* (1988), 488 U.S. 75, 109 S.Ct. 346, 102 L.Ed.2d 300.

**{¶ 8}** Defendant's appellate counsel has identified two possible issues for appeal, the first of which is:

{¶ 9} "APPELLANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL AND THUS DEPRIVED OF HIS RIGHT TO DUE PROCESS UNDER BOTH THE OHIO AND UNITED STATES CONSTITUTION."

{¶ 10} Counsel's performance will not be deemed ineffective unless and until counsel's performance is proved to have fallen below an objective standard of reasonable representation and, in addition, prejudice arises from counsel's performance. *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674. To show that a defendant has been prejudiced by counsel's deficient performance, the defendant must affirmatively demonstrate to a reasonable probability that were it not for counsel's errors, the result of the trial would have been different. Id.; *State v. Bradley* (1989), 42 Ohio St.3d 136.

{¶ 11} Defendant fails to identify any conduct on the part of his trial counsel that he claims constituted deficient performance, much less that resulted in prejudice to Defendant as defined by *Strickland v. Washington*. Accordingly, this assignment of error lacks arguable merit.

{¶ 12} Defendant's second possible issue for appeal is:

{¶ 13} "THE TRIAL COURT ERRED BY PERMITTING HEARSAY TESTIMONY AGAINST THE DEFENDANT DENYING THE DEFENDANT HIS SIXTH AMENDMENT RIGHT TO CONFRONT WITNESSES AGAINST HIM."

{¶ 14} Hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted. Evid.R. 801(C). Hearsay is generally not admissible, subject to several exceptions. Evid.R. 802, 803. One such exception is an excited utterance under Evid.R. 803(2), which provides:

{¶ 15} "Excited utterance. A statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition."

{¶ 16} In order for a statement to qualify as an excited utterance, one must establish:

{¶ 17} "(a) that there was some occurrence startling enough to produce a nervous excitement in the declarant, which was sufficient to still [her] reflective faculties and thereby make [her] statements and declarations the unreflective and sincere expression of [her] actual impressions and beliefs, and thus render [her] statement or declaration spontaneous and unreflective, (b) that the statement or declaration, even if not strictly contemporaneous with its exciting cause, was made before there had been time for such nervous excitement to lose a domination over [her] reflective faculties, so that such domination continued to remain sufficient to make [her] statements and declaration the unreflective and sincere expression of [her] actual impressions and beliefs, (c) that the statement or declaration related to such startling occurrence or the circumstances of such startling occurrence, and (d) that the declarant had an opportunity to observe personally the matters asserted in her statement or declaration." *Jackson; State v. Duncan* (1978), 53 Ohio St.2d 215.

{¶ 18} The decision of a trial court to admit or exclude evidence rests within the sound discretion of the court and will not be disturbed on appeal absent a showing of an abuse of discretion. *State v. Sage* (1987), 31 Ohio St.3d 173.

{¶ 19} "'Abuse of discretion' has been defined as an attitude that is unreasonable, arbitrary or unconscionable. *Huffman v. Hair Surgeon, Inc.* (1985), 19 Ohio St.3d 83, 87, 19 OBR 123, 126, 482 N.E.2d 1248, 1252. It is to be expected that most instances of abuse of discretion will result in decisions that are simply unreasonable, rather than decisions that are

unconscionable or arbitrary.

{¶ 20} "A decision is unreasonable if there is no sound reasoning process that would support that decision. It is not enough that the reviewing court, were it deciding the issue *de novo,* would not have found that reasoning process to be persuasive, perhaps in view of countervailing reasoning processes that would support a contrary result." *AAAA Enterprises, Inc. v. River Place Community Redevelopment* (1990), 50 Ohio St.3d 157, 161.

{¶ 21} Defendant first claims that recordings of the 911 calls made by his two neighbors, which were played in court at the trial, constitute inadmissible hearsay. We disagree. Both of these callers describe a little girl crying, sitting inside a Buick parked in front of Defendant's home, and a bald, African-American male, wearing a tank top, walking around inside the house like he is crazy. Accordingly, these statements by the callers to the 911 dispatcher were admissible under Evid.R. 803(2) as excited utterances. We further note that the trial court refused to consider the statements made by the little girl in the car, as related by the callers.

{¶ 22} As to the further issue of whether the statements made by the two callers to the 911 dispatcher were "testimonial" in nature and therefore violated Defendant's Sixth Amendment confrontation rights, in *Crawford v. Washington* (2004), 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177, the United States Supreme Court held that a "testimonial" statement from a witness who does not appear at trial is inadmissible against the accused unless the witness is unavailable to testify and the defendant had a prior opportunity to cross-examine the witness. In a later case, *Davis v. Washington* (2006), 547 U.S. 813, 126 S.Ct. 2266, 165 L.Ed.2d 224, the United States Supreme Court provided the following definition of

"testimonial" statements:

**{¶ 23}** "[S]tatements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of interrogation is to enable police assistance to meet an ongoing emergency. They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution." Syllabus.

**{¶ 24}** Typically, 911 calls made to report an ongoing emergency that requires police assistance to resolve that emergency are not "testimonial" in nature and therefore the Confrontation Clause does not apply. *Davis v. Washington; State v. Byrd*, 160 Ohio App.3d 538, 2005-Ohio-1902 at ¶17-21; *State v. Mills*, Montgomery App. No. 21146, 2005-Ohio-2128 at ¶39. The 911 calls made by Defendant's two neighbors are not testimonial in nature. Those calls were not the product of any police interrogation, and the callers called in to report an ongoing domestic disturbance involving a possible shooting that required police assistance to resolve that emergency. Those kinds of 911 calls are not testimonial and the Confrontation Clause does not apply.

**{¶ 25}** Defendant additionally complains that the statements made by the victim, Smithson, to police officers upon first seeing them after they entered the home and took Defendant into custody, that Defendant had just tried to kill her and she was afraid for her life, which statements were related by the officers at trial, are also inadmissible hearsay. Again, we disagree. Moments after police entered the home and took Defendant into custody, Smithson emerged from a back bedroom. Upon first seeing the officers she

immediately stated that Defendant had just tried to kill her and she was afraid for her life. These statement fell within the excited utterance exception to the hearsay rule.

{¶ 26} Smithson had just been the victim of domestic violence moments earlier, a startling event. Smithson's hair was disheveled, she was crying hysterically, short of breath, and partially nude. Less than five minutes had elapsed since police were dispatched to the home on a report of domestic violence, and less than a minute had elapsed since police entered the home. Smithson exhibited numerous visible injuries. Clearly, she was still under the stress of excitement caused by the startling domestic violence event. Smithson's statements related to the domestic violence event, and as the victim of the domestic violence, she had personally observed the violent attack. Accordingly, Smithson's statements were admissible as excited utterances. *Jackson*.

{¶ 27} With respect to whether the admission of Smithson's statements to police violated Defendant's confrontation rights, we note that the officers were responding to an ongoing emergency at the time Smithson made her statements. Smithson's primary purpose was to obtain assistance from the officers in resolving that emergency because Defendant was still on the scene. Smithson's statements were not the product of any police questioning. Under those circumstances, Smithson's statements were not testimonial and Confrontation Clause does not apply. *State v. Williams*, Lucas App. No. L-08-1371, 2009-Ohio-6967 at ¶58.

{¶ 28} The trial court did not abuse its discretion in admitting the 911 calls or Smithson's initial statements to police at the scene. This assignment of error lacks arguable merit.

{¶ 29} In addition to reviewing the possible issues for appeal raised by Defendant's appellate counsel, we have conducted an independent review of the trial court's proceedings and have found no error having arguable merit. Accordingly, Defendant's appeal is without merit and the judgment of the trial court will be affirmed.

DONOVAN, J., And HALL, J., concur.

Copies mailed to:

Troy B. Daniels, Esq.
Timothy L. Carlin, Esq.
Charles A. McDaniel, Jr.
Hon. James Ruppert, Visiting Judge