[Cite as *State v. Montgomery*, 2013-Ohio-3040.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**MONTGOMERY   COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | Appellate Case No. 24621 |
| Plaintiff-Appellee | : | |
| | : | Trial Court Case No. 2010-CR-4028 |
| v. | : | |
| | : | |
| CLIFTON MONTGOMERY | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 12th day of July, 2013.

. . . . . . . . . . .

MATHIAS H. HECK, JR., by MICHELE D. PHIPPS, Atty. Reg. #0069829, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, P.O. Box 972, 301 West Third Street, Dayton, Ohio 45422
        Attorney for Plaintiff-Appellee

DARRELL L. HECKMAN, Atty. Reg. #0002389, Harris, Meyer, Heckman & Denkewalter, One Monument Square, Suite 200, Post Office Box 38130, Urbana, Ohio 43078
        Attorney for Defendant-Appellant

. . . . . . . . . . . . .

HALL, J.,

{¶ 1}    Clifton Montgomery appeals his conviction for felonious assault with a deadly weapon and the imposition of court costs. He contends that the trial court admitted inadmissible

hearsay; permitted the prosecutor, during cross examination, to ask an improper line of questions; and permitted the prosecutor, during closing arguments, to vouch for the credibility of a witness. These contentions are meritless. Montgomery also contends that the trial court should not have imposed court costs on him. This contention has merit. We therefore affirm in part and reverse in part and remand.

## I. Facts and Evidence

{¶ 2} At trial, the victim, Montgomery's girlfriend Tierra Montgomery (no relation), testified about what happened. Around 4 a.m., on December 18, 2010, Clifton Montgomery called her and asked if he could come to her apartment, and she told him that she would call him when she got home. Tierra arrived at her apartment around 5 a.m. She found her cousin Destiny Gregory asleep in the living room. Tierra called Clifton Montgomery and when he arrived around 5:15 a.m. they went to her bedroom and started listening to music. Not long after, Clifton Montgomery said to Tierra, "'You smell like sex and perfume.'" (Tr. 36). She responded, "'How do I smell like sex and perfume and I've been over at my sister's house?'" (*Id*.). Then things turned ugly. Clifton Montgomery punched Tierra twice in the face. Pinning her on the bed, he pulled out a big knife. When Tierra tried to grab the knife, she cut her hand. She was also cut on her shoulder. As they struggled, Tierra screamed for her cousin. Gregory testified that she heard Tierra's frightened screams and that they scared her. Gregory walked to Tierra's room and slowly opened the door. She saw Clifton Montgomery poised over Tierra with a big knife in his hand. After unsuccessfully trying to persuade him to leave, Gregory went to the living room and used her cell phone to call 911. While she was talking to the 911 operator, Tierra managed to escape from Clifton. She ran into the living room crying and screaming. Clifton came out yelling and left

the apartment. All of this was recorded by the 911 operator and played at trial. When the police arrived, Tierra told them what had happened and who had done it. She told the police that Clifton lived in his parent's house–only about a block away from her apartment. The police found the appellant there and arrested him. A police officer testified that Clifton Montgomery had told the police that he had been home all night. Another officer, Mark Orick, testified that he heard his sergeant ask Clifton Montgomery's mother, Edwina Adams, whether Clifton had been home all evening and that Adams said she did not know.

{¶ 3}   The appellant presented alibi testimony from three people. His mother testified that Clifton was home when she went to bed around 11:30 p.m. She said that she did not see him again until the police arrived. Clifton's father, Clifton Montgomery, Sr., testified that the last time he saw his son was around 4:30 a.m. LiLica Williams, the mother of one of the appellant's children, testified that she spent the night in Clifton's parent's house with him. She said that the only place he went that night was outside to smoke.

{¶ 4}   On the jury's guilty verdict, the trial court entered a judgment of conviction, which imposed court costs on him as required by R.C. 2947.23.

{¶ 5}   Montgomery appealed.

## II. Review

{¶ 6}   Montgomery assigns four errors to the trial court. He alleges that the court erred by imposing court costs on him; by admitting the 911-call recordings and Officer Orick's testimony about what his mother said; by permitting the prosecutor, on cross examination, to ask his mother about his children and their mothers; and by permitting the prosecutor, during closing arguments, to vouch for the credibility of Destiny Gregory.

## A. Imposition of Court Costs

**{¶ 7}** The first assignment of error alleges that the trial court erred by imposing court costs because at the sentencing hearing the trial judge did not tell him that it would do this. The state concedes that this is reversible error. We agree.

**{¶ 8}** "Despite the fact that former R.C. 2947.23 (like current R.C. 2947.23(A)) requires a judge to assess costs against all convicted criminal defendants, * * * 'waiver of [the payment of] costs is permitted but not required if the defendant is indigent.'" *State v. Joseph*, 125 Ohio St.3d 76, 2010-Ohio-954, 926 N.E.2d 278, ¶ 11, quoting *State v. White*, 103 Ohio St.3d 580, 2004-Ohio-5989, 817 N.E.2d 393, ¶ 14. If the judge fails to orally notify a defendant that it is imposing court costs on him, the defendant is "denied the opportunity to claim indigency and to seek a waiver." *Id.* at ¶ 22. The failure is prejudicial error. *Id*. The remedy is remand for the limited purpose of allowing Montgomery to move the trial court for a waiver. *See id.* at ¶ 23.

**{¶ 9}** The first assignment of error is sustained.

## B. Hearsay

**{¶ 10}** The second assignment of error alleges that the trial court erred in admitting inadmissible hearsay into evidence. Montgomery contends that the 911-call recording and the testimony about what Montgomery's mother told the sergeant are inadmissible hearsay.

**{¶ 11}** Hearsay may not be admitted as evidence, of course, unless it falls under an exception. "911 calls are usually admissible under the excited utterance or the present sense impression exception to the hearsay rule." *State v. Crowley*, 2d Dist. Clark No. 2009 CA 65, 2009-Ohio-6689, 2009 WL 4893283 at *5, citing *Ratliff v. Brannum*, 2d Dist. Greene No. 2008-CA-5, 2008-Ohio-6732, ¶ 132 (saying that 911 calls are admissible as excited utterances),

citing *State v. Jackson*, 2d Dist. Champaign No. 2004-CA-24, 2005-Ohio-6143, ¶ 15 (determining that a 911 tape was properly admitted as a present sense impression). There are three foundational requirements to satisfy the excited-utterance exception: "the existence of a startling or shocking event, the declarant's possessing firsthand knowledge of that event and being under the stress or excitement caused by the event when her statement was made, and the declarant's statement that relates to that startling event." (Citation omitted.) *State v. Byrd*, 160 Ohio App.3d 538, 2005-Ohio-1902, 828 N.E.2d 133, ¶ 21 (2d Dist.).

{¶ 12} The 911 call here was made during an incident of domestic violence in which Clifton Montgomery punched Tierra and then waived a knife in her face–plainly a startling event. Destiny Gregory heard Tierra's frightened cries and screams and saw Clifton Montgomery holding the knife. Almost immediately after, Gregory called 911. The statements made in the 911-call recordings by Gregory, Clifton Montgomery, and Tierra satisfy the requirements for the excited-utterance exception. *Compare State v. McDaniel*, 2d Dist. Montgomery No. 24423, 2011-Ohio-6326, ¶ 26 (determining that statements made to police by a victim of domestic violence only moments after the event were admissible as excited utterances where the victim's hair was disheveled; she was crying hysterically, short of breath, and partially nude; and she had numerous visible injuries); *State v. Byrd*, 2d Dist. Montgomery No. 24534, 2012-Ohio-1849, ¶ 21 (determining that the statements made by a victim of domestic violence during a 911 call were properly admitted as excited utterances to prove the truth of what the victim had said where the victim called 911 immediately after her husband had jumped on her, pulled out her hair, and beat her).

{¶ 13} Officer Mark Orick testified that he heard his sergeant ask Montgomery's

mother, Edwina Adams, "if he [Montgomery] in fact had been home all evening." (Tr. 249). In response, said Orick, "[s]he said she did not know, that she had just gotten out of bed, that she had just–from the time she heard the knock and the commotion is then when she had gotten out of bed. She did not offer up any information as to one way or another whether he had just arrived home or had been home all evening because she had no knowledge of that due to the fact that she was in bed." (*Id.*).

{¶ 14}   This testimony is undoubtedly hearsay. But its admission is harmless because Adams herself testified at trial and said almost exactly the same thing.[1] Because Montgomery was not prejudiced by the admission, the admission is not a basis for reversal. *See* App.R. 12(B); Crim.R. 52(A).

{¶ 15}   The second assignment of error is overruled.

### C. Cross-examination questions

{¶ 16}   The third assignment of error alleges that the trial court erred by permitting the prosecutor, during cross examination, to ask Clifton Montgomery's mother improper questions. The prosecutor ostensibly asked her about her grandchildren:

Q * * * How many grandchildren do you have?

* * *

Q How many of those grandkids are Clifton, Junior's kids?

A Three.

---

[1] Although the appellant does not raise the issue, we note that "the admission of hearsay does not violate the Confrontation Clause if the declarant testifies at trial." *State v. Keenan*, 81 Ohio St.3d 133, 142, 689 N.E.2d 929 (1998), citing *California v. Green*, 399 U.S. 149, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970). The admission of the hearsay statement is not constitutional error. *Id.* And "'[n]onconstitutional error is harmless if there is substantial other evidence to support the guilty verdict.'" *Id.*, quoting *State v. Webb*, 70 Ohio St.3d 325, 335, 638 N.E.2d 1023 (1994).

* * *

A Divinity.

Q And the mom is LaLica?

A Yes.

Q Okay. Celeon, that's the 11-year-old boy, right?

A Yes.

Q Okay. Who's Celeon's mom?

A Jamie Tellis.

* * *

A Oh, he has another daughter named Paris.

* * *

Q Okay. And who's Paris' mom?

* * *

A Wow, what's her name. I can't think of her name right now.

Q Okay. But it's not Jamie and it's not LaLica?

A No.

(Tr. 333-335). Montgomery contends that the prosecutor had no legitimate basis for asking these questions. Rather, says Montgomery, by pointing out that each of his three children has a different mother, the prosecutor was improperly trying to impugn his morals.

{¶ 17} Montgomery did not object at trial to this line of questioning. Consequently he has waived any error based on the questions other than plain error. *State v. Williams*, 79 Ohio St.3d 1, 12, 679 N.E.2d 646 (1997); *see* Crim.R. 52(B). "The burden of demonstrating plain error

is on the party asserting it. A reversal is warranted if the party can prove that the outcome 'would have been different absent the error.'" (Citation omitted.) *State v. Payne*, 114 Ohio St.3d 502, 2007-Ohio-4642, 873 N.E.2d 306, ¶_17, quoting *State v. Hill*, 92 Ohio St.3d 191, 203, 749 N.E.2d 274 (2001).

{¶ 18}  We tend to agree that this line of questioning is only marginally relevant and should have been limited or excluded. But given the substantial evidence presented of Montgomery's guilt, we are not convinced that without these questions he would have been acquitted.

{¶ 19}  The third assignment of error is overruled.

### D. The prosecutor's closing argument

{¶ 20}  The fourth assignment of error alleges that the trial court erred by permitting the prosecutor, during closing arguments, to express his opinion of a witness's credibility. Montgomery contends that the prosecutor improperly vouched for Tierra's credibility when he said to the jury, "she wasn't lying to you."

{¶ 21}  "Vouching occurs when the prosecutor implies knowledge of facts outside the record or places his or her personal credibility in issue." (Citations omitted.) *State v. Davis*,116 Ohio St.3d 404, 2008-Ohio-2, 880 N.E.2d 31, ¶ 232. So the prosecutor "may not express a personal belief or opinion as to the credibility of a witness." (Citation omitted.) *Id.* But the prosecutor may comment on the evidence–what it shows and what reasonable inferences may be drawn from it. *State v. Baker*, 159 Ohio App.3d 462, 2005-Ohio-45, 824 N.E.2d 162, ¶ 19 (2d Dist.). This includes comments about the evidence that respond to defense attacks. *Davis* at *¶* 241 (finding no improper vouching because the prosecutor was "simply responding to defense attacks

by commenting on the experts' collective experience"). Also, the prosecutor does not vouch for a witness merely "because he asked the jurors to decide for themselves whether the[] witnesse[] w[as] being truthful." (Citation omitted.) *Id.* at ¶ 235.

**{¶ 22}** The prosecutor here made the objected-to statement in the context of a response to defense attacks on Tierra's credibility:

> Let's talk about Tierra's credibility for just a second. Tierra Montgomery is a human being. She's not a video camera and she's not a tape recorder. There was a lot of time spent picking on her about little individual details. And you heard a lot of that in the defendant's closing argument * * *.
>
> * * *
>
> I challenge you–I ask you to get all your heads together and review Tierra's testimony. * * * Read through it entirely and then decide if Tierra Montgomery was consistent when she talked to the police, when Destiny was on the phone with 9-1-1, when she went to the preliminary hearing, and when she sat in that chair and told you what happened to her. * * *
>
> * * *
>
> And then you've got to evaluate her demeanor on the witness stand in judging her credibility. And what I'm going to suggest to you was going on during her cross-examination was not her being untruthful, was not her trying to be difficult. What you were seeing was an attorney and a witness not understanding each other, failing to communicate, and yes, she got a little frustrated. But she wasn't lying to you.

(Tr. 417-422). In our view the prosecutor was not vouching for Tierra. The prosecutor was simply commenting on the evidence and asking the jury to decide for itself whether Tierra was being truthful.

{¶ 23}    The fourth assignment of error is overruled.

{¶ 24}    The judgment of the trial court is reversed with respect to the payment of court costs; the rest of the judgment is affirmed. This case is remanded for further proceedings consistent with this opinion.

. . . . . . . . . . . . .

FROELICH and WELBAUM, JJ., concur.

Copies mailed to:

Mathias H. Heck
Michele D. Phipps
Darrell L. Heckman
Hon. Gregory F. Singer