[Cite as *State v. Brown*, 2022-Ohio-716.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 29152 |
| | : | |
| v. | : | Trial Court Case No. 2020-CRB-3669 |
| | : | |
| JONATHAN A. BROWN | : | (Criminal Appeal from Municipal Court) |
| | : | |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 11th day of March, 2022.

. . . . . . . . . . .

AMY B. MUSTO, Atty. Reg. No. 0071514, Assistant Prosecuting Attorney, City of Dayton Prosecutor's Office, 335 West Third Street, Room 372, Dayton, Ohio 45402
    Attorney for Plaintiff-Appellee

MICHAEL J. SCARPELLI, Atty. Reg. No. 0093662, 210 West Main Street, Troy, Ohio 45373
    Attorney for Defendant-Appellant

. . . . . . . . . . . . .

DONOVAN, J.

{¶ 1} Defendant-appellant Jonathan A. Brown appeals his conviction for assault, in violation of R.C. 2903.13(A), a misdemeanor of the first degree, and obstructing official business, in violation of R.C. 2921.31(A), a misdemeanor of the second degree. Brown filed a timely notice of appeal on May 26, 2021.

{¶ 2} On December 1, 2020, Dayton Police Officer Gary Roesser was dispatched to a residence on Blueberry Avenue after someone called 911 and then hung up before providing any information. Officer Roesser testified that he was driving a marked cruiser and was wearing a police uniform. Roesser pulled his cruiser up to the residence (Brown's residence); Brown was outside, approximately ten yards from the residence. Roesser testified that he observed a female, later identified as Kenyandra Reynolds, running away from Brown, who was chasing her. Reynolds was crying profusely and had blood on her face and clothing.

{¶ 3} After Officer Roesser exited his cruiser, Brown stopped chasing Reynolds and began to run toward his residence. Brown ignored several commands to stop before running inside his residence. Roesser testified that Reynolds appeared to be very upset and was having difficulty breathing. Reynolds informed Roesser that Brown had dragged her off of a couch, pulled her into another room, and thrown her onto a dog cage. Officer Roesser testified that Reynolds had scratch marks on her neck and abrasions on her elbows; Reynolds also complained that she had back pain from being thrown onto the dog cage. Roesser testified that he believed the blood he observed on Reynolds's face and clothes had come from Brown's nose during his struggle with Reynolds. Upon

entering Brown's residence, Roesser observed a partially destroyed dog cage, which was consistent with Reynolds's narrative regarding how Brown had injured her. Brown was eventually arrested at the scene.

{¶ 4} On December 2, 2020, Brown was charged with one count of domestic violence, one count of assault, and one count of obstructing official business. Brown pled not guilty to the charged offenses, and the trial was scheduled for December 8, 2020. After several continuances requested by Brown, a bench trial was held on March 24, 2021.

{¶ 5} Notably, Reynolds did not testify at trial, and Brown testified on his own behalf. Brown testified that Reynolds had been the initial aggressor and that he had only defended himself against her. At the close of the State's case in chief, the trial court granted Brown's Crim.R. 29 motion for acquittal with respect to the domestic violence charge.

{¶ 6} The trial court did not find Brown to be credible, and he was found guilty of assault and obstructing official business. The trial court sentenced Brown to 180 days in jail for the assault, with two days credit for time served and 118 days suspended. Brown was sentenced to 90 days in jail for obstructing official business, with credit for two days served and 28 days suspended. The trial court also ordered Brown to serve a two-year term of community control when he was released from jail.

{¶ 7} Brown appeals. His first assignment of error is as follows:

THE TRIAL COURT ERRED IN ALLOWING OFFICER ROESSER

TO TESTIFY AS TO HEARSAY STATEMENTS MADE BY KENYANDRA

REYNOLDS.

{¶ 8} Brown contends that the trial court erred when it allowed Officer Roesser to testify regarding statements made to him by Reynolds. Brown argues that the trial court's admission of those statements violated his Sixth Amendment right to confrontation of any witnesses against him.

{¶ 9} "[T]he [United States] Supreme Court has recognized that a defendant's Sixth Amendment right to confront witnesses against him is violated when an out-of-court statement that is testimonial in nature is admitted into evidence without the defendant having had the opportunity to cross-examine the declarant." *State v. Eicholtz*, 2d Dist. Clark No. 2012-CA-7, 2013-Ohio-302, ¶ 26, citing *Crawford v. Washington*, 541 U.S. 36, 68, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004).

> Testimonial statements include statements " 'that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial.' " *State v. Kelley*, 2d Dist. Clark No. 2011 CA 37, 2012-Ohio-1095, ¶ 58, quoting *Crawford* at 52. " '[S]tatements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of interrogation is to enable police assistance to meet an ongoing emergency. They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution.' " *Eicholtz* at ¶ 26, quoting *Davis v.*

*Washington*, 547 U.S. 813, 126 S.Ct. 2266, 165 L.Ed.2d 224 (2006), paragraph one of the syllabus.

*State v. Kerr*, 2d Dist. Montgomery No. 26686, 2016-Ohio-965, ¶ 22.

**{¶ 10}** The Sixth Amendment right to confrontation of witnesses does not extend to nontestimonial hearsay. *State v. Norris*, 2d Dist. Montgomery No. 26147, 2015-Ohio-624, ¶ 13, citing *State v. Stahl*, 111 Ohio St.3d 186, 2006-Ohio-5482, 855 N.E.2d 834, ¶ 21. Evid.R. 803(1) permits the admission of a "present sense impression," which is defined as "[a] statement describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter unless circumstances indicate lack of trustworthiness." Similarly, Evid.R. 803(2) excludes an excited utterance from the hearsay rule. An excited utterance is "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition."

**{¶ 11}** The excited utterance and present sense impression exceptions to the definition of hearsay reflect "an assumption that statements or perceptions that describe events uttered during or within a short time from the occurrence of the event are more trustworthy than statements not uttered at or near the time of the event. Moreover, 'the key to the statement's trustworthiness is the spontaneity of the statement, either contemporaneous with the event or immediately thereafter. By making the statement at the time of the event or shortly thereafter, the minimal lapse of time between the event and statement reflects an insufficient period to reflect on the event perceived — a fact which obviously detracts from the statement's trustworthiness.' " *State v. Travis*, 165 Ohio

App.3d 626, 2006-Ohio-787, 847 N.E.2d 1237, ¶ 35 (2d Dist.), quoting *State v. Ellington*, 8th Dist. Cuyahoga No. 84014, 2004-Ohio-5036, ¶ 10.

{¶ 12} Finally, relevant evidence is generally admissible whereas irrelevant evidence is not. Evid.R. 402. "Relevant evidence" is defined as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Evid.R. 401. Relevant evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury. Evid.R. 402; Evid.R. 403(A).

{¶ 13} A trial court has broad discretion to admit or exclude evidence, and its exercise of that discretion will not be disturbed on appeal absent an abuse of discretion. *Norris*, 2d Dist. Montgomery No. 26147, 2015-Ohio-624, at ¶ 14. "A trial court abuses its discretion when it makes a decision that is unreasonable, unconscionable, or arbitrary." *State v. Darmond*, 135 Ohio St.3d 343, 2013-Ohio-966, 986 N.E.2d 971, ¶ 34.

{¶ 14} Here, Brown relies on our decision in *State v. Byrd*, 160 Ohio App.3d 538, 2005-Ohio-1902, 828 N.E.2d 133, to support his argument that the statements made by Reynolds to Officer Roesser were testimonial in nature and therefore did not fall under the excited utterance exception. In *Byrd*, the statements during a 911 call were admitted under the excited utterance exception to the hearsay rule. We also held in *Byrd* that incriminating statements about Byrd made by Byrd's girlfriend to the police during their investigation at the scene were testimonial and should not have been admitted as an exception to the hearsay rule. Byrd's girlfriend did not testify at trial, and we found that

the use of her prior statements had violated Byrd's right to confront a witness against him. However, this conclusion was based on the particular facts of that case.

{¶ 15} In *Byrd,* "the evidence demonstrate[d] that [the girlfriend] was the primary aggressor" in the incident and that Byrd had been arrested only because "the domestic violence protocol necessitated that an arrest be made." *Id.* at ¶ 3-4. (Byrd had not wanted his girlfriend to be arrested, because she was pregnant. *Id.* at ¶ 4.) *Byrd* is unlike most assault/domestic violence cases in that the girlfriend, whose statements to a police officer were used against Byrd, might also have been charged as the perpetrator of the assault. As such, the testimonial nature of her statements (i.e., whether she had reflected on the possibility that they might be used against Bryd and/or deflect attention from her own role) was more apparent. *Byrd* does not compel a broad conclusion that all statements to the police by a victim are testimonial in nature, as evidenced by our holdings in numerous other cases. *See, e.g, State v. McDaniel*, 2d Dist. Montgomery No. 24423, 2011-Ohio-6326; *State v. Rockwell*, 2d Dist. Montgomery No. 19454, 2002-Ohio-6789.

{¶ 16} We find that the facts in the instant case more closely align with our decision in *State v. Norris*, 2d Dist. Montgomery No. 26147, 2015-Ohio-624, wherein we found the following:

> The trial court's conclusion that Battle's statements to the 911 dispatcher and to Officer Holmes were excited utterances and/or present sense impressions and, thus, exceptions to the hearsay rule, was supported by the following evidence: the statements were made during Battle's 911 call or within 10-15 minutes thereafter, when the police arrived at her home

and began their investigation; Norris was still in the home with Battle when the statements were made, as was a child who was apparently Battle's daughter; and Battle was injured, had not been treated for her injuries, and believed that she was in need of medical assistance, as indicated by her request that the dispatcher send a "medic." According to Officer Holmes, Battle was crying and bleeding when he arrived. Battle reported to the dispatcher and to Holmes that Norris had hit her. All of these factors support the conclusion that Battle was focused on and upset by her immediate circumstances when the statements were made, that she had not had time to reflect on how those statements might later be used, and that they were not testimonial. The trial court did not abuse its discretion or violate Norris's right to confront the witnesses against him when it permitted Battle's statements to be admitted at trial.

*Id.* at ¶ 15.

{¶ 17} Similar to the victim in *Norris*, Reynolds was being actively chased by Brown when Officer Roesser arrived at the scene. Reynolds was crying and had blood on her face and clothing. Officer Roesser testified that Reynolds also seemed to be having difficulty breathing and speaking. Furthermore, Roesser's testimony did not suggest that Reynolds had been the primary aggressor in the incident, nor did Reynolds's statements indicate that she had initiated the altercation with Brown. These factors supported the conclusion that Reynolds had been focused on and upset by her immediate circumstances when she made the statements in question and that she had not had time

to reflect on how those statements might later be used. Accordingly, the statements made by Reynolds implicating Brown were excited utterances and were not testimonial. Thus, the trial court did not abuse its discretion when it allowed Officer Roesser to testify regarding statements made to him by Reynolds, and Brown's right to confront the witnesses against him was not violated.

{¶ 18} Brown's first assignment of error is overruled.

{¶ 19} Because they are interrelated, Brown's second and third assignments of error will be discussed together:

THE TRIAL COURT'S VERDICT IS NOT SUPPORTED BY SUFFICIENT EVIDENCE.

THE TRIAL COURT'S VERDICT IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶ 20} In these assignments, Brown argues that the State failed to adduce sufficient evidence to support his convictions for assault and obstructing official business and that the trial court's verdicts were against the weight of the evidence.

{¶ 21} Regarding the sufficiency of the evidence, this Court has previously stated:

"A sufficiency of the evidence argument disputes whether the State has presented adequate evidence on each element of the offense to allow the case to go to the jury or sustain the verdict as a matter of law." *State v. Wilson*, 2d Dist. Montgomery No. 22581, 2009-Ohio-525, ¶ 10, citing *State v. Thompkins*, 78 Ohio St.3d 380, 678 N.E.2d 541 (1997). When reviewing whether the State has presented sufficient evidence to support a conviction,

"the relevant inquiry is whether any rational finder of fact, after viewing the evidence in the light most favorable to the State, could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Dennis*, 79 Ohio St.3d 421, 430, 683 N.E.2d 1096 (1997), citing *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). A guilty verdict will not be disturbed on appeal unless, "reasonable minds could not reach the conclusion reached by the trier-of-fact." *Id.*

*State v. Wilson*, 2d Dist. Montgomery No. 27001, 2016-Ohio-7329, ¶ 6.

{¶ 22} This Court has also previously noted:

When a conviction is challenged as being against the weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). In a manifest-weight analysis, the credibility of the witnesses and the weight to be given to their testimony are primarily for the trier of facts to resolve. *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967). "Because the factfinder * * * has the opportunity to see and hear the witnesses, the cautious exercise of discretionary power of a court of appeals to find that a judgment is against the manifest weight of the evidence requires that a

substantial deference be extended to the factfinder's determinations of credibility. The decision whether, and to what extent, to credit the testimony of particular witnesses is within the peculiar competence of the factfinder, who has seen and heard the witnesses." *State v. Lawson*, 2d Dist. Montgomery No. 16288, 1997 WL 477684, *5 (Aug. 22, 1997). This court will not substitute its judgment for that of the trier of fact on the issue of witness credibility unless it is patently apparent that the trier of fact lost its way. *State v. Bradley*, 2d Dist. Champaign No. 97-CA-03, 1997 WL 691510 (Oct. 24, 1997). * * *

*State v. Nelson*, 2d Dist. Greene No. 2014-CA-7, 2015-Ohio-113, ¶ 29.

{¶ 23} Brown was convicted of misdemeanor assault in violation of R.C. 2903.13(A), which provides in pertinent part that "[n]o person shall knowingly cause or attempt to cause physical harm to another * * *." Brown was also convicted of obstructing official business in violation of R.C. 2921.31(A), which states that "[n]o person, without privilege to do so and with purpose to prevent, obstruct, or delay the performance by a public official of any authorized act within the public official's official capacity, shall do any act that hampers or impedes a public official in the performance of the public official's lawful duties."

{¶ 24} Officer Roesser testified that when he arrived at the scene, he observed a female, Reynolds, running away from Brown, who was chasing her. Reynolds was crying and had blood on her face and clothing. After Roesser exited his cruiser, Brown stopped chasing Reynolds and ran toward his residence, ignoring several commands to

stop from Roesser before running inside. Roesser testified that Reynolds appeared to be very upset and was having difficulty breathing. Reynolds informed Roesser that Brown had dragged her off of a couch, pulled her into another room, and thrown her onto a dog cage. Reynolds had scratch marks on her neck and abrasions on her elbows AND complained of back pain from being thrown onto the cage. Roesser testified that the blood he observed on Reynolds's face and clothes had apparently come from Brown's nose during their altercation. Inside Brown's residence, Roesser observed a partially destroyed dog cage, which was consistent with Reynolds's narrative regarding how Brown had injured her.

{¶ 25} Viewed in a light most favorable to the State, it is clear that sufficient evidence was presented at trial that Brown had caused Reynolds physical harm by dragging her off a couch and slamming her onto a dog cage. Furthermore, the evidence established the essential elements of Brown's conviction for obstructing official business. "[F]leeing from a police officer who is lawfully attempting to detain the suspect * * *, is an affirmative act that hinders or impedes the officer in the performance of the officer's duties as a public official and is a violation of R.C. 2921.31[A], obstructing official business." *State v. Harris*, 10th Dist. Franklin No. 05AP-27, 2005-Ohio-4553, ¶ 16. Here, the evidence established that Roesser had ordered Brown to stop at least twice, but Brown ignored him and ran into the residence.

{¶ 26} Brown's manifest-weight argument is equally unpersuasive. As set forth above, the evidence supported a finding that Brown had assaulted Reynolds and disobeyed the direct order of Officer Roesser. The credibility of the witnesses and the

weight to be given their testimony were matters for the jury to resolve. *State v. Benton*, 2d Dist. Miami No. 2010-CA-27, 2012-Ohio-4080, ¶ 7. The trial court reasonably credited the testimony provided by the State's witness, evaluated the evidence and all reasonable inferences as compared to the elements of assault and obstructing official business, and found Brown guilty. The trial court did not lose its way in choosing to disregard the testimony of Brown about who had started the altercation. Having reviewed the entire record, we cannot find that the evidence weighed heavily against conviction or that a manifest miscarriage of justice occurred.

{¶ 27} Brown's second and third assignments of error are overruled.

{¶ 28} All of Brown's assignments of error having been overruled, the judgment of the trial court is affirmed.

. . . . . . . . . . . .

WELBAUM, J. and EPLEY, J., concur.

Copies sent to:

Amy B. Musto
Michael J. Scarpelli
Hon. Mia Wortham Spells