[Cite as *State v. Simons*, 193 Ohio App.3d 784, 2011-Ohio-2071.]

IN THE COURT OF APPEALS FOR CHAMPAIGN COUNTY, OHIO

THE STATE OF OHIO,                                          :

    Appellee,                                              :

                                                     C.A.    CASE    NO.
                                              2010 CA 7

v.

                                        :              T.C.    NO.
                                          09CR227

SIMONS,                                           :       (Criminal appeal from
                                               Common Pleas Court)
    Appellant.                                          :

                                       :

. . . . . . . . . .

**O P I N I O N**

Rendered on the   29th   day of    April   , 2011.

. . . . . . . . . .

Nick A. Selvaggio, Champaign County Prosecuting Attorney, and Richard L. Houghton, Assistant Prosecuting Attorney, for appellee.

Russ B. Cope, for appellant.

. . . . . . . . . .

DONOVAN, Judge.

{¶ 1} Defendant-appellant, Carl Ray Simons, appeals from his conviction and sentence for the following offenses: two counts of breaking and entering in violation of R.C. 2911.13(A), (C), felonies of the fifth degree; two counts of theft of property

valued between $500 and $5,000 in violation of R.C. 2913.02(A)(1), (B)(2), felonies of the fifth degree; one count of burglary in violation of R.C. 2911.12(A)(3), (C), a felony of the third degree; one count of grand theft in violation of R.C. 2913.02(A)(1), (B)(4), a felony of the third degree; one count of theft, in violation of R.C. 2913.03(A)(1), (B)(2), a misdemeanor of the first degree; one count of having weapons while under disability in violation of R.C. 2923.13(A)(2), (B), a felony of the third degree; and one count of intimidation of a witness in a criminal case in violation of R.C. 2921.04(B), (D), a felony of the third degree. The count of burglary contained a firearm specification.

{¶ 2} After a jury trial held on January 11 and 12, 2010, Simons was found guilty of the above offenses and sentenced to an aggregate prison term of 19 years in prison. Simons filed a timely notice of appeal with this court on March 11, 2010.

I

{¶ 3} On September 2, 2009, Simons was indicted in case No. 2009-CR-227 for two counts of breaking and entering, two counts of theft of property valued between $500 and $5,000, one count of burglary accompanied by a one-year firearm specification, one count of grand theft, one count of theft, one count of having weapons while under disability, one count of intimidation of a witness in a criminal case, and one count of complicity to receive stolen property.

{¶ 4} All of the appealed counts against Simons stem from three separate incidents in which he was accused of breaking into and stealing from two businesses and a residence located in Urbana, Ohio. The first incident occurred at the Rock-n-Robin Diner during the night of December 6, 2008. The following morning,

an employee arrived at the diner and discovered that the cash register had been emptied and money had been stolen from a bank bag left in the office by the owner. There was no evidence of forced entry into the diner, and no windows were broken. An accounting revealed that between $500 and $600 was stolen from the diner.

{¶ 5} The second incident occurred on or about the evening of December 28, 2008, when an officer from the Urbana Police Department discovered an open door at White's Ford Auto Dealership. Other than the open door, the officer found no other evidence that a break-in had occurred and left the premises. The next morning, on December 29, 2008, police were called to the dealership by employees after a report of a break-in. Once again, there was no sign of forced entry, but police discovered that mud had been tracked through the building and a dolly had been used to remove car batteries and other auto parts totaling approximately $2,277 in value.

{¶ 6} The third incident occurred sometime between June 29 and July 6, 2009, when the residence of George Jumper, located at 613 College Way in Urbana, Ohio, was burglarized. While he was away on vacation, Jumper's house was broken into and approximately 19 firearms, $350 in cash, and a check made payable to Jumper were stolen. Upon investigation, Urbana police discovered that the front door to the residence had been forced open. Jumper's neighbor neither saw nor heard anything unusual.

{¶ 7} As part of their investigation into the thefts, Urbana police interviewed a woman named Tonia Justice. Justice was an employee at the Rock-n-Robin Diner during this time frame. The owner of the diner provided Justice's name to the police

when she was asked about persons she suspected of committing the robbery. Justice had called in sick on the day that the diner was broken into and robbed. Furthermore, Justice was Jumper's tenant at the time that his residence was burglarized. We note that Justice was evicted from Jumper's rental property in mid-July of 2009 for failure to pay rent.

{¶ 8} Upon being interviewed, Justice implicated Simons in all three incidents. Justice informed the police that Simons and her ex-boyfriend, Terry Current, had broken into Jumper's residence and stolen the firearms. Based on information provided by Justice, police were able to recover six of the stolen firearms at the residence of Carl Pullins Sr., who told police that he bought the guns from Terry Current. Carl Pullins Jr. made statements to police that implicated Simons in the burglary at the Jumper residence, as well. Evidence was also adduced that Simons contacted Justice and left a threatening voicemail regarding statements she had made to Urbana police regarding his and Current's involvement in the three incidents.

{¶ 9} After a two-day jury trial, Simons was found guilty of two counts of breaking and entering, two counts of theft of property valued between $500 and $5,000, one count of burglary accompanied by a one-year firearm specification, one count of grand theft, one count of theft, one count of having weapons while under disability, and one count of intimidation of a witness in a criminal case. The jury was unable to reach a verdict on the count of complicity to receive stolen property, and the state ultimately dismissed the count with prejudice. At the sentencing hearing held on February 25, 2010, the trial court ordered Simons to serve an aggregate sentence of 19 years in prison.

{¶ 10} It is from this judgment that Simons now appeals.

II

{¶ 11} Simons's first assignment of error is as follows:

{¶ 12} "The trial court committed reversible error because appellant's convictions on counts one, two, six, seven, eight, and nine were against the manifest weight of the evidence."

{¶ 13} In his first assignment, Simons argues that his convictions for counts I, II, VI, VII, VIII, and IX were against the manifest weight of the evidence. Specifically, Simons asserts that the state relied heavily on the testimony of Tonia Justice and Terry Current in order to convict him on those counts. Simons contends that the testimony provided by Justice and Current was so inconsistent and contradictory that the jury must have lost its way and created a manifest miscarriage of justice.

{¶ 14} "When an appellate court analyzes a conviction under the manifest weight standard it must review the entire record, weigh all of the evidence and all the reasonable inferences, consider the credibility of the witnesses and determine whether in resolving conflicts in the evidence, the fact finder clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. Only in exceptional cases, where the evidence 'weighs heavily against the conviction,' should an appellate court overturn the trial court's judgment." *State v. Dossett*, Montgomery App. No. 20997, 2006-Ohio-3367, ¶ 32, quoting *State v. Martin* (1983), 20 Ohio App.3d 172, 20 OBR 215, 485 N.E.2d 717, paragraph three of the syllabus.

{¶ 15} The credibility of the witnesses and the weight to be given to their

testimony are matters for the trier of facts to resolve. *State v. DeHass* (1967), 10 Ohio St.2d 230, 231. "Because the factfinder * * * has the opportunity to see and hear the witnesses, the cautious exercise of the discretionary power of a court of appeals to find that a judgment is against the manifest weight of the evidence requires that substantial deference be extended to the factfinder's determinations of credibility. The decision whether, and to what extent, to credit the testimony of particular witnesses is within the peculiar competence of the factfinder, who has seen and heard the witness." *State v. Lawson* (Aug. 22, 1997), Montgomery App. No. 16288, 1997 WL 476684.

{¶ 16} This court will not substitute its judgment for that of the trier of facts on the issue of witness credibility unless it is patently apparent that the trier of fact lost its way in arriving at its verdict. *State v. Bradley* (Oct. 24, 1997), Champaign App. No. 97-CA-03.

### A. Counts I and II

{¶ 17} In counts I and II of the indictment, Simons was charged with breaking and entering and theft from the Rock-n-Robin Diner on the night of December 6, 2008. At trial, Current testified that he and Simons, accompanied by Justice, went to a Speedway gas station located near the diner on the night that the break-in occurred. Current testified that Justice encouraged Simons to break into the diner and told him where the money was located, as well as how to open the cash register. Current also testified that while they were at the gas station, Simons was out of his sight for approximately seven to ten minutes. When Simons reappeared, Current testified that he had a cigar box, a cup of change, and a wad of money in his pocket.

Current further testified that Simons stated that "the money was easy to find and that he had a little bit of trouble with the cash register, something about a key where she [Justice] had told him where to turn the key to get in the cash register." Current testified that even though Simons had attempted to enlist his assistance in breaking into the diner, he did not help and was unaware of what had transpired until after Simons reappeared at the gas station.

{¶ 18} Justice testified that on the night that the diner was broken into, she was at home all evening. Justice testified that Current and Simons were at her house that night, but left to go to the Speedway gas station near the diner. Justice further testified that the two men were gone for approximately 30 to 45 minutes. Justice testified that Simons told her upon his return that it was easy to get inside the diner because someone had left the door unlocked. Additionally, Justice testified that she observed in Current's possession a box that the owner of the diner had kept underneath the register at the diner. Justice denied any involvement in the break-in at the diner.

{¶ 19} Justice's testimony is inconsistent with Current's testimony insofar as they disagree over their respective levels of involvement in the break-in. Simply put, Justice denied any involvement, while Current testified that she encouraged Simons to break into the diner, told him how to do it, and accompanied both men when they went to the Speedway near the diner on the night of the break-in. We also note that Current denied any active involvement in the break-in at the diner. Both witnesses' testimony, however, place Simons in the close vicinity of the diner on the night of the break-in, and both Current and Justice testified regarding statements Simons made

to them implicating himself in the crimes.

**B. Counts VI, VII,VIII, and IX**

{¶ 20} In counts VI, VII, and VIII, Simons was charged with burglary, grand theft, and theft at the residence of George Jumper in Urbana between the dates of June 29, 2009, and July 6, 2009. In count IX, Simons was charged with having weapons while under disability arising out of his grand theft of firearms from Jumper's residence, having previously been convicted of complicity to robbery in 2006. Current and Justice testified that Simons broke into Jumper's house and stole money and firearms. Once again, however, both witnesses denied any involvement in the burglary and thefts from Jumper's residence. Moreover, Current and Justice implicated each other in the crimes. Specifically, Justice testified that Current had asked her whether there were any alarms at the Jumper residence. Current testified that he had heard Justice ask Simons to break into Jumper's residence. We also note that Carl Pullins Sr. told police that Current sold him six firearms that were later found to have been stolen from Jumper. Carl Pullins Jr., however, implicated Simons in the thefts of the Jumper residence.

{¶ 21} More importantly, however, Current and Justice both testified that they observed Simons in possession of a black suitcase containing several firearms wrapped in a black and white diamond-patterned afghan blanket. Justice further testified that Simons told her that he was surprised that he did not find any jewelry in Jumper's house when he burglarized the residence. Jumper corroborated the testimony of Current and Justice when he testified that one of the items stolen from his residence was a black suitcase that contained several firearms wrapped in a

diamond-patterned black, white, and tan afghan that his wife had given him.

{¶ 22} Upon review, the only instances where Current and Justice's testimony are inconsistent occur where one attempts to implicate the other while exculpating himself or herself. In all other instances, both witnesses' testimony consistently implicate Simons as the person who committed the offenses for which he was charged and convicted in counts I, II, VI, VII, VIII, and IX. The jury did not lose its way simply because it chose to believe the testimony of Current and Justice as it related to Simons's culpability for the burglaries and thefts at the diner and Jumper's residence. Having reviewed the entire record, we cannot clearly find that the evidence weighs heavily against a conviction or that a manifest miscarriage of justice has occurred.

{¶ 23} Simons's first assignment of error is overruled.

III

{¶ 24} Simons's second assignment of error is as follows:

{¶ 25} "The trial court erred by convicting appellant under R.C. 2921.04(B) because the alleged intimidation occurred before the commencement of any proceedings in a court of law."

{¶ 26} Simons was convicted of intimidation of a witness in violation of R.C. 2921.04(B), which states:

{¶ 27} "No person, knowingly and by force or by unlawful threat of harm to any person or property, shall attempt to influence, intimidate, or hinder the victim of a crime in the filing or prosecution of criminal charges or an attorney or witness involved in a *criminal action or proceeding* in the discharge of the duties of the attorney or

witness." (Emphasis added.)

{¶ 28} In the instant case, the alleged intimidation occurred when Simons called Justice and left a threatening message on her cell phone regarding comments she made to police regarding the break-ins at the diner, White's Ford, and the Jumper residence. Simons argues that he should not have been convicted of the offense of intimidation of a witness because at the time that he left the message, he had not been charged or indicted for any crime, nor had any court proceedings been initiated against him.

{¶ 29} In support of his argument, Simons relies on *State v. Malone,* 121 Ohio St.3d 244, 2009-Ohio-310, in which the Supreme Court held that a "conviction for intimidation of a witness under R.C. 2921.04(B) is not sustainable when the intimidation occurred after the criminal act but prior to any proceedings flowing from the criminal act in a court of justice."

{¶ 30} We recently discussed *Malone* in *State v. Davis,* Montgomery App. No. 23858, 2011-Ohio-1280, wherein we stated the following:

{¶ 31} "The State makes a strong argument that *Malone*'s use of the word 'investigation' in its first and last paragraphs implies that an investigation of a reported crime is a 'criminal action or proceeding' so as to be within the prohibition of R.C. 2921.04(B). However, in *Gooden*[1] (in which the [Eighth Appellate District] found insufficient evidence of witness intimidation), there had been a crime and an investigation. Further the *Malone* court states the question before it to be whether an R.C. 2921.04 conviction is 'sustainable where the intimidation occurred after the

_____

[1] *State v. Gooden,* Cuyahoga App. No. 82621, 2004-Ohio-2699.

criminal act but prior to any police investigation of the criminal act, and thus also prior to any proceeding flowing from the criminal act in a court of justice.' Id. at ¶ 9. Its answer is that such conviction 'is not sustainable when the intimidation occurred after the criminal act but prior to any proceedings flowing from the criminal act *in a court of justice.'* (Emphasis added.) Id."

{¶ 32} In *Davis*, we interpreted *Malone* to require a holding that "criminal action or proceeding" as used in R.C. 2921.04 requires " 'proceedings flowing from the criminal act in a court of justice.' " Id. at ¶ 29, quoting *Malone* at ¶ 19. Accordingly, we held that since there had only been an offense reported and a police investigation initiated, there was insufficient evidence of a "criminal action or proceeding" to sustain a conviction of witness intimidation in violation of R.C. 2921.04(B). *Davis*, Montgomery App. No. 23858, 2011-Ohio-1280, ¶ 29.

{¶ 33} In the instant case, the alleged intimidation occurred after the offenses had been reported and a police investigation initiated, but before any "criminal action or proceeding" had been initiated against Simons. Thus, pursuant to our holding in *Davis*, "there [is] insufficient evidence of a 'criminal action or proceeding' to sustain a conviction for witness intimidation in violation of R.C. 2921.04(B)," and Simons's conviction for that offense is vacated.

{¶ 34} Simons's second assignment of error is sustained.

IV

{¶ 35} Simons's third and final assignment of error is as follows:

{¶ 36} "The trial court erred by overruling appellant's motion for mistrial."

{¶ 37} In his final assignment, Simons contends that the trial court abused its

discretion when it overruled his motion for mistrial made by defense counsel after the following testimony was elicited from Terry Current during direct examination by the state:

{¶ 38} "The State: Are you familiar with the Defendant Carl Ray Simons?

{¶ 39} "Current: Yes.

{¶ 40} "Q: How long have you known Mr. Simons?

{¶ 41} "A: Approximately probably four or five years.

{¶ 42} "Q: Is that because you lived near him or just came in contact with him through mutual friends or something else?

{¶ 43} "A: *I was incarcerated with him at London Correctional Institution*.

{¶ 44} "Q: And –

{¶ 45} "The Court: Excuse me.   Counsel approach the bench, please.

{¶ 46} (Bench Conference Held)

{¶ 47} "The Court: I don't recall any conversation about that incarceration.

{¶ 48} "The State: I was not expecting him to testify to that particular fact.

{¶ 49} "The Court: So my question is correct.   I didn't recall that we had –

{¶ 50} "The State: Yes.   That is correct.

{¶ 51} "The Court: Was the incarceration for the Clark County conviction that makes him disabled to have a firearm or a different offense?

{¶ 52} "The State: I believe based on this statement just now from the witness that it was [a] prior offense.

{¶ 53} "The Court: Do you have any information?

{¶ 54} "Defense Counsel: I don't have different information, but I believe it's in

regard to a prior offense that occurred ten years or more ago.

**{¶ 55}** "The Court: I believe that the instruction that was going to be given about the conversation between Padolik will be given to the jury now.[2] It will be modified slightly saying: 'Evidence has been presented about the location of the individuals when they were acquainted with each other. Such testimony about location does not directly relate to any issue in the present case. Such testimony about location does not have any bearing on the character of the Defendant and shall not be--and you shall not consider the location of the statement as any indication of guilt of the Defendant.'

**{¶ 56}** "Defense Counsel: Your Honor, I would respectfully have to ask that I would have to move for mistrial based upon the witness' response.

**{¶ 57}** "I think it prejudices my client because it elicited a response that he was previously in prison. The jury could infer that he has prior felony convictions that he was sentenced to prison for, and I think there's a direct difference between being in prison and being in local jail; and I think the jury probably has that general knowledge and that would prejudice my client.

**{¶ 58}** "The Court: Does that State agree to mistrial?

**{¶ 59}** "The State: No. State would oppose mistrial. The Court has already indicated that it would accept the testimony regarding statements made in a local jail, and the jury has already been made aware of a prior felony conviction by way of State's Exhibit 22, which indicated the prior felony conviction for complicity to

---

[2]Padolik was a witness called by the state who testified regarding certain admissions allegedly made by Simons while both men were being held in jail in Champaign County, Ohio.

robbery.

{¶ 60} "Given that the jury either already knows or will know of those two facts, the State does not believe that that knowledge is sufficient basis for mistrial.

{¶ 61} "The Court: Motion for mistrial is not granted.  In the absence of granting that, do you have any objection to the statement?

{¶ 62} "Defense Counsel: No, Your Honor.

{¶ 63} "***

{¶ 64} "(In Open Court)

{¶ 65} "The Court: Ladies and gentlemen of the jury, you've just heard testimony about the location of the individuals when they were acquainted with each other.  Such testimony about location does not directly relate to any issue in the present case.  Such testimony about location does not have any bearing on the character of the Defendant and you shall not consider the location of the statement as any indication of the guilt of the Defendant in the present case.

{¶ 66} "With that admonition, we'll continue with the testimony." (Emphasis added.)

{¶ 67} Initially, we note that the incarceration to which Current referred in his direct testimony apparently did not stem from the conviction that gave rise to Simons's disability.  Simons argues that although a reference had been made to a prior conviction through the introduction of State's Exhibit 22, he was unfairly prejudiced by Current's disclosure regarding their meeting while incarcerated at

London Correctional Institution.[3]  Accordingly, Simons asserts that the trial court abused its discretion when it overruled his motion for mistrial.

**{¶ 68}** The grant or denial of a mistrial lies within the sound discretion of the trial court. *State v. Trimble*, 122 Ohio St.3d 297, 2009-Ohio-2961.  "However, a trial court need not declare a mistrial unless 'the ends of justice so require and a fair trial is no longer possible.'" Id., citing *State v. Franklin* (1991), 62 Ohio St.3d 118, 127.

**{¶ 69}** Upon review, we find that the trial court did not abuse its discretion when it overruled Simons's motion for mistrial.  In the instant case, Current's disclosure of Simons's prior incarceration was a brief, isolated remark and was promptly followed by a curative instruction.  For purposes of mistrial analysis, there is a presumption of the efficacy of curative instructions with regard to improper comments made by a witness or prosecutor.  *State v. Nichols* (1993), 85 Ohio App.3d 65, 69.  We also note that although Current testified that he first met Simons while incarcerated, no further testimony was adduced regarding the nature of the conviction or the term of imprisonment.  Furthermore, the record reveals that the state was surprised by Current's response and did not intentionally attempt to elicit a prejudicial response.  In fact, the jury was already aware that Simons had been previously convicted and incarcerated based on the introduction of State's Exhibit 22. We note that no objection was made to the introduction of State's Exhibit 22.  In light of the trial court's decisive action in calling a bench conference out of the hearing of

---

[3]State's Exhibit 22 was a judgment entry of conviction and sentence of two years for one count of complicity to robbery, in violation of R.C. 2923.03(A)(2), a felony of the second degree, in case No. 06-CR-721 to which Simons pleaded no contest in 2006.  This conviction served as the basis for Simons's disability to possess firearms.

the jury to discuss Current's disclosure immediately after it occurred, as well as the court's curative instruction to the jury, we find that Simons did not suffer any prejudice as a result of the court's decision to overrule his motion for a mistrial.

{¶ 70} Simons's final assignment of error is overruled.

V

{¶ 71} In light of the foregoing, Simons's conviction and sentence for intimidation of a witness is vacated. In all other respects, the judgment of the trial court is affirmed.

Judgment affirmed in part

and reversed in part.

. . . . . . . . . .

FAIN and FROELICH, JJ., concur.