[Cite as *State v. Adams*, 2022-Ohio-1258.]

# IN THE COURT OF APPEALS OF OHIO
## SECOND APPELLATE DISTRICT
## GREENE COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 2021-CA-10 |
| | : | |
| v. | : | Trial Court Case No. 2018-CR-43 |
| | : | |
| BILLY R. ADAMS, III | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

# O P I N I O N

Rendered on the 15th day of April, 2022.

. . . . . . . . . . .

MARCY A. VONDERWELL, Atty. Reg. No. 0078311, Assistant Prosecuting Attorney, Greene County Prosecutor's Office, Appellate Division, 61 Greene Street, Suite 200, Xenia, Ohio 45385
      Attorney for Plaintiff-Appellee

KATE L. BOWLING, Atty. Reg. No. 0084442, Liberty Tower, 120 West Second Street, 17th Floor, Dayton, Ohio 45402
      Attorney for Defendant-Appellant

. . . . . . . . . . . .

DONOVAN, J.

{¶ 1} Defendant-appellant Billy R. Adams III appeals his conviction for one count of gross sexual imposition (GSI), in violation of R.C. 2907.05(A)(1), a felony of the fourth degree. Adams filed a timely notice of appeal on April 6, 2021.

{¶ 2} The incident which formed the basis for the charges against Adams occurred on the night of July 13, 2017, when the victim, M.P., attended a party at Cimarron Apartments in Beavercreek, Ohio. M.P. testified that at the time of the incident, she was enrolled as a freshman at Wright State University and was a member of the dance team.

{¶ 3} While at the party, M.P. spoke with Adams, and the two individuals became aware that they were related as second cousins. M.P. consumed alcoholic beverages at the party. At some point during the evening, a group of the partygoers decided to travel to Caddy's Taphouse in Beavercreek. Adams drove M.P. and several others to Caddy's in his motor vehicle. At Caddy's, Adams purchased additional alcoholic beverages for M.P. Eventually, M.P. left the bar with Adams to travel to his residence under the assumption that other people would be meeting them there. Once at Adams's residence, M.P. changed into gym shorts and a t-shirt provided by him. M.P. testified that, after changing her clothes, she and Adams looked at family photos together in his bedroom.

{¶ 4} M.P. testified that, at some point, Adams laid down on his bed and attempted to pull her onto the bed with him. When M.P. tried to get up and leave the room, Adams stated, "You try to leave and I'll beat your ass." M.P. testified that, despite her pleas for him to stop, Adams then grabbed her breasts, touched her vagina, threw her on the bed, pinned her down, yanked off the shorts she was wearing, grabbed her wrists, inserted his

fingers in her vagina, spit on his hand in order to lubricate himself, and then inserted his penis into her vagina. M.P. testified that she was scared during the incident and tried to push Adams off of her. After the assault was over, Adams eventually called an Uber for M.P.; the Uber brought her back to her own motor vehicle, which was still at Cimarron Apartments from the previous night. M.P. then drove to her mother's house in Mason, Ohio, showered, and attempted to sleep. When she woke up, M.P. called her college roommate and told her about the assault. Later that day, M.P. also told her boyfriend about the assault, and they went to the hospital so that she could be examined.

{¶ 5} Lisa Smiley, a sexual assault nurse examiner, testified that she conducted a forensic interview and examination of M.P. at the University of Cincinnati Hospital in West Chester. During the examination, she observed "redness to the fossa navicularis," which was consistent with nonconsensual sexual activity and the account of the assault by the victim. Smiley also observed a bruise on M.P.'s right thigh. Later, Adams's DNA was found on the samples of M.P.'s underwear that she put back on after she was assaulted.

{¶ 6} On January 22, 2018, Adams was indicted for the following offenses: GSI, in violation of R.C. 2907.05(A)(1), a felony of the fourth degree, and two counts of rape, in violation of R.C. 2907.02(A)(2), both felonies of the first degree. Adams's first attorney, Louis H. Sirkin, filed multiple motions on behalf of his client, including a motion to suppress; motions to modify the terms and conditions of Adams's bond; a motion to view the scene; and a motion to exclude the expert testimony of Nurse Smiley. On March 3, 2019, Attorney John D. Holschuh entered his appearance as second-chair counsel for Adams.

{¶ 7} Adams's jury trial began on March 4, 2019, and ended on March 8, 2019. Adams was found guilty of one count of GSI; however, the jury was unable to reach a unanimous verdict regarding the two counts of rape, leading to a mistrial on those counts. On March 22, 2019, Attorney Sirkin filed a motion for judgment of acquittal and a motion for a new trial on behalf of Adams; the trial court denied both motions on April 25, 2019. Notably, Adams did not testify on his own behalf or adduce any other evidence during his first trial.

{¶ 8} On April 3, 2019, Attorney Kate Bowling entered her appearance on behalf of Adams.  On April 25, 2019, Adams, through Attorney Bowling, filed a motion to continue/delay sentencing, which the trial court denied on the same day.  On May 3, 2019, the trial court sentenced Adams to 18 months in prison and designated him as a Tier I sex offender.  On May 17, 2019, Adams filed a motion for a stay of execution of sentence, which was denied by the trial court.  On May 31, 2019, Adams filed a notice of appeal regarding his conviction of GSI (Greene C.A. 2019-CA-33).  We dismissed Adams's appeal for lack of jurisdiction on the basis that there was no final appealable order, because the two rape counts in the indictment were unresolved.

{¶ 9} A new trial was scheduled with respect to the two rape counts.  During the time between his first and second trials, Adams served his full 18-month prison sentence for the GSI conviction.  At Adams's second trial in March 2021, he was acquitted on both of the rape counts.  During the second trial, Adams testified on his own behalf and also called witnesses in his defense.  Adams's acquittals for the rape offenses resolved all of the offenses in his original indictment, rendering his conviction for GSI a final appealable

order, which is now properly on appeal to this Court.

{¶ 10} Adams's first assignment of error is as follows:

APPELLANT'S SIXTH AMENDMENT RIGHT TO COUNSEL WAS VIOLATED WHEN HE WAS DENIED EFFECTIVE ASSISTANCE.

{¶ 11} Adams contends that Attorney Sirkin provided him with ineffective assistance of counsel during his first trial by: 1) inviting testimony, otherwise excluded, which was testimonial hearsay and violated Adams's Sixth Amendment right to confrontation; 2) repeatedly failing in his attempts to introduce impeachment evidence; and 3) allegedly being so unprepared at trial that Adams was prejudiced.

{¶ 12} We review the alleged instances of ineffective assistance of trial counsel under the two prong analysis set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and adopted by the Supreme Court of Ohio in *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989). Pursuant to those cases, trial counsel is entitled to a strong presumption that his or her conduct falls within the wide range of reasonable assistance. *Strickland* at 688. To reverse a conviction based on ineffective assistance of counsel, it must be demonstrated that trial counsel's conduct fell below an objective standard of reasonableness and that his errors were serious enough to create a reasonable probability that, but for the errors, the result of the trial would have been different. *Id.* "Hindsight is not permitted to distort the assessment of what was reasonable in light of counsel's perspective at the time, and a debatable decision concerning trial strategy cannot form the basis of a finding of ineffective assistance of counsel." (Citation omitted.) *State v. Mitchell*, 2d Dist. Montgomery No. 21957, 2008-

Ohio-493, ¶ 31.

{¶ 13} An appellant is not deprived of the effective assistance of counsel when counsel chooses, for strategic reasons, not to pursue every possible tactic. *State v. Brown*, 38 Ohio St.3d 305, 319, 528 N.E.2d 523 (1988). The test for a claim of ineffective assistance of counsel is not whether counsel pursued every possible defense; the test is whether the defense chosen was objectively reasonable. *Strickland* at 688. A reviewing court may not second-guess decisions of counsel which can be considered matters of strategy. *State v. Smith*, 17 Ohio St.3d 98, 477 N.E.2d 1128 (1985). Debatable strategic and tactical decisions may not form the basis of a claim for ineffective assistance of counsel, even if, in hindsight, it looks as if a better strategy had been available. *State v. Cook*, 65 Ohio St.3d 516, 524, 605 N.E.2d 70 (1992).

{¶ 14} Here, Adams argues that Attorney Sirkin was ineffective when he cross-examined T.P., the victim's mother. Specifically, Adams argues that because of Sirkin's questions during the cross-examination, the State was able to elicit hearsay testimony from T.P. that she had received a phone message from S.M., Adams's mother, suggesting that all that occurred on the night of the assault was that Adams kissed the victim. Adams contends that this alleged mistake on the part of Sirkin established ineffective assistance of counsel by inviting hearsay testimony which violated his Sixth Amendment right to confront to his accusers.

{¶ 15} Hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted. Evid.R. 801(C). Hearsay is generally not admissible, except as provided by

the U.S. or Ohio Constitutions, by statute or court rule. Evid.R. 802.

{¶ 16} We have previously noted:

The Sixth Amendment's Confrontation Clause provides, "In all criminal prosecutions, the accused shall enjoy the right * * * to be confronted with the witnesses against him." "The United States Supreme Court has held that the right to confrontation is violated when an out-of-court statement that is testimonial in nature is admitted into evidence without the defendant[']s having had the opportunity to cross-examine the declarant. *Crawford* [*v. Washington*], 541 U.S. 36, 68." *State v. Syx*, 190 Ohio App.3d 845, 2010-Ohio-5880, 944 N.E.2d 722, ¶ 23 (2d Dist.). The *Crawford* court stated that "the core class of testimonial statements includes statements 'that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial.' *Id.* at 52." *Syx* at ¶ 23.

"Despite the importance of this right, a violation of the Confrontation Clause can be harmless if 'it is clear beyond reasonable doubt that the admission of these hearsay statements did not prejudice' the defendant." *Matter of Umoh*, 2d Dist. Montgomery No. 16912, 1998 WL 737983 (Oct. 23, 1998). The factors to be considered in determining if error is harmless include " 'the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on

material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case.' (Citation omitted)." *Id.*

In *Crawford*, the defendant's wife, exercising her marital privilege, did not testify at his trial. *Id.*, 541 U.S. 36. Before trial, however, the defendant's wife described the stabbing her husband was charged with in a tape-recorded statement to police. *Id.* The recorded statement conflicted with the defendant's claim that the stabbing was self-defense. *Id.* The defendant argued that his wife's statement was not only inadmissible hearsay, but also violated his Sixth Amendment right of confrontation. *Id.* The district court determined that the statement, though hearsay, was reliable and trustworthy, and allowed it into evidence. *Id.* The defendant was subsequently convicted. *Id.*

On appeal, the U.S. Supreme Court analyzed the reliability of the wife's testimonial hearsay statement under the Confrontation Clause. The *Crawford* court concluded that "where testimonial statements are at issue, the only indicium of reliability sufficient to satisfy constitutional demands is the one the Constitution actually prescribes: confrontation." *Id.* at 68-69. Thus, the *Crawford* court found that because the wife's taped statement was testimonial, its admission during the defendant's trial violated his constitutional right to confrontation. *Id.*

*State v. Ali*, 2d Dist. Clark No. 2014-CA-59, 2015-Ohio-1472, ¶ 14-17.

{¶ 17} In *State v. Byrd*, 160 Ohio App.3d 538, 2005-Ohio-1902, 828 N.E.2d 133 (2d Dist.), this Court held that the incriminating statements made by Byrd's girlfriend to police during their investigation of the scene of an assault were testimonial in nature and should not have been admitted. *Id.* at ¶ 24. This Court concluded that Byrd was "entirely correct in asserting that a reasonable person would anticipate that the alleged statements made by [the girlfriend] would be used against him in an investigation and prosecution. In allowing [the officer] to testify as to those statements, Byrd was denied the right to face his accusers." *Id.*

{¶ 18} In this case, we note that the information that T.P. received from S.M., Adam's mother -- that Adams had kissed M.P. on the night of the assault -- contained no information about an actual sexual assault. Nothing in T.P.'s testimony regarding the information she received from S.M. in the phone message suggested that Adams's kissing M.P. on the night of the incident was anything other than consensual or that said conduct formed the basis for his GSI conviction. Furthermore, the record is devoid of any evidence that the information T.P. received from S.M. was unduly prejudicial to Adams and/or negatively affected the outcome of his trial. Contrary to Adams's assertions, his not guilty verdicts on the rape charges in the second trial after the earlier mistrial did not establish that trial counsel's conduct fell below an objective standard of reasonableness such that the result of the first trial would have been different, i.e. that Adams would not have been convicted of GSI if counsel had acted differently.

{¶ 19} Additionally, the record establishes that while T.P.'s testimony about S.M.'s statement constituted hearsay, it did not violate the Confrontation Clause because it was

not testimonial in nature. In *Crawford*, the court reasoned that the Confrontation Clause applied only to "witnesses," meaning those who " 'bear testimony' " against the accused. " 'Testimony,' in turn, is typically '[a] solemn declaration or affirmation made for the purpose of establishing or proving some fact.' " *Crawford,* 541 U.S. at 51, 124 S.Ct. 1354, 158 L.Ed.2d 177, quoting 1 N. Webster, *American Dictionary of the English Language* (1828).

{¶ 20} S.M.'s statement to T.P. did not involve the police, was not solicited at the direction of the police, and did not involve testimony taken under oath. Furthermore, the statement made by S.M. to T.P. did not involve information that would lead someone to believe that the statement would be available for use at a later trial. Rather, S.M. merely informed T.P. in a phone message that Adams suggested that he and M.P. had engaged in consensual "kissing" on the night of the alleged attack. Simply put, S.M. informed T.P. of her view or information that there had been no assault, only non-criminal behavior by Adams. Based upon the foregoing, we find that S.M.'s statement to T.P. did not implicate the Confrontation Clause, as it was not testimonial in nature; in fact, it supported Adams's defense. Additionally, Sirkin's cross-examination of T.P. did not amount to ineffective assistance of counsel in "open[ing] the door" for the State to question T.P. regarding the content of the message left by S.M.

{¶ 21} Adams next argues that he received ineffective assistance of counsel in the first trial because Sirkin "repeatedly failed in attempts to introduce impeachment evidence." Specifically, Adams argues that Sirkin was ineffective when he unsuccessfully attempted to impeach Nurse Smiley with a statement regarding vaginal

tearing in a police report written by Beavercreek Police Officer Cynthia Peffly, who initially interviewed M.P. after she went to the hospital. Although the trial court did not permit Sirkin to impeach Smiley with the report authored by Peffly, the record establishes that he was still able to effectively cross-examine the State's witnesses. Specifically, Sirkin established that, although Officer Peffly thought that M.P. had suffered a vaginal tear, she actually had not. Additionally, Sirkin was able to elicit testimony that the apparent redness to M.P.'s fossa navicularis was consistent with several circumstances, i.e. sexual activity (consensual or nonconsensual), tight clothing, and/or the use of a tampon. While not entirely dispositive, the fact that the jury in Adams's first trial was unable to reach a verdict on the two counts of rape supports the conclusion that Sirkin's trial methods and strategies were not ineffective.

{¶ 22} Finally, Adams points to a few instances during the first trial in which it appeared that Sirkin was disorganized or forgetful in regard to trial procedure, specific dates, and the pronunciation of the names of certain State's witnesses. Adams argues that Sirkin's conduct in this regard established that he was unprepared to move forward with Adams's defense and that Adams was prejudiced as a result. Additionally, Adams argues that, in light of Sirkin's deficient performance throughout the first trial, the cumulative effect of his errors prejudiced Adams and deprived him of a fair trial. Upon review, we find that there is no merit to Adams's assertion that the cumulation of counsel's alleged errors resulted in ineffective assistance. *See State v. Graham*, 164 Ohio St.3d 187, 2020-Ohio-6700, 172 N.E.3d 841, ¶ 172. Specifically, when none of the individual claims of ineffective assistance of counsel have merit, cumulative error cannot be

established simply by joining those meritless claims together. *Id.* at ¶ 170; see *also State v. Dean*, 146 Ohio St.3d 106, 2015-Ohio-4347, 54 N.E.3d 80, ¶ 296; *State v. Mammone*, 139 Ohio St.3d 467, 2014-Ohio-1942, 13 N.E.3d 1051, ¶ 173. Mispronunciation of names is insignificant, as is some confusion over dates during a complex trial. Here, Adams has failed to establish that Sirkin provided ineffective assistance of counsel at any point during the first trial.

{¶ 23} Adams's first assignment of error is overruled.

{¶ 24} Adams's second assignment of error is as follows:

THE TRIAL COURT COMMITTED PLAIN ERROR WHEN IT ADMITTED TESTIMONIAL HEARSAY WHICH VIOLATED APPELLANT'S SIXTH AMENDMENT RIGHT TO CONFRONTATION.

{¶ 25} Adams argues that the trial court committed plain error when it admitted the statement made by S.M. through the testimony of T.P., because his right to confrontation of witnesses was violated.

{¶ 26} During Adams's first trial, the following exchange occurred between the prosecutor and T.P. during her redirect testimony:

THE STATE: Alright, now isn't it true that you do have a second source of knowledge? Is that correct?

T.P.: Yes.

Q: And I'm going to ask you about that. And isn't it true that the second source of knowledge is the message that was left by [S.M.] after you told her what [M.P.] told you about who did this?

A: Right, um hum.

Q: And isn't it true that during that message –

TRIAL COURT: By the way, for the record, that's a phone message?

THE STATE: It is, Your Honor, I apologize.   I can make the record clear on that.

TRIAL COURT: It's clear.

THE STATE: Alright.   Isn't it true that [S.M.] told you that [Adams] told her that that only thing that happened – the only thing that happened – between him and your daughter is that he kissed her?

T.P.: Right.

Q: Isn't that true?

A: That's true.

Q: So, that is also included within your knowledge?

A: Yes.

Tr. 324-325.

**{¶ 27}** Adams did not object to this questioning, thus plain error analysis applies. Plain error occurs when an error or defect at trial, not brought to the attention of the court, affects a substantial right of the defendant. Crim.R. 52(B); *State v. Pridgett*, 8th Dist. Cuyahoga No. 101823, 2016-Ohio-687, ¶ 25.   "Plain error does not exist unless it can be said that but for the error the outcome of the trial clearly would have been otherwise." *State v. Mundy*, 99 Ohio App.3d 275, 300, 650 N.E.2d 502 (2d Dist.1994), citing *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978); *State v. Underwood*, 3 Ohio St.3d 12,

444 N.E.2d 1332 (1983). Courts must proceed on a claim of plain error "with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *Long* at paragraph three of syllabus. The appellant bears the burden of affirmatively demonstrating error on appeal. *State v. Hayes*, 2d Dist. Montgomery No. 26379, 2016-Ohio-7241, ¶ 107. Adams has not met this burden.

{¶ 28} As previously stated, the information that T.P. received from S.M. -- that Adams kissed M.P. on the night of the assault -- contained no information about an actual sexual assault. Nothing in T.P.'s testimony regarding the information she received from S.M. in the phone message suggested that Adams's kissing M.P. on the night of the incident was anything other than mutual/consensual or that said conduct formed the basis for his GSI conviction.

{¶ 29} Furthermore, while T.P.'s testimony about S.M.'s statement constituted hearsay, it did not violate the Confrontation Clause because it was not testimonial in nature. The Confrontation Clause applies only to "witnesses," meaning those who " 'bear testimony' " against the accused. " 'Testimony,' in turn, is typically '[a] solemn declaration or affirmation made for the purpose of establishing or proving some fact.' " *Crawford,* 541 U.S. at 51, 124 S.Ct. 1354, 158 L.Ed.2d 177. As previously stated, S.M.'s statement to T.P. did not involve the police, was not solicited at the direction of the police, and did not involve testimony taken under oath. Additionally, the statement made by S.M. to T.P. did not involve information or circumstances that would lead someone to believe that the statement would be available for use at a later trial. Rather, S.M. merely informed T.P. in a phone message that Adams had stated that he and M.P. had engaged

in consensual "kissing" on the night of the alleged attack. Simply put, S.M. informed T.P. that there was no assault, only consensual behavior between Adams and M.P. The statement was of an exculpatory nature, a mother defending her son. Therefore, we find that S.M.'s statement to T.P. did not implicate the Confrontation Clause as it was not testimonial in nature. Thus, we conclude that Adams has failed to establish the existence of error, let alone plain error.

{¶ 30} Adams's second assignment of error is overruled.

{¶ 31} Adams's third and final assignment of error is as follows:

THE TRIAL COURT ERRED IN DENYING [sic] MOTION FOR MISTRIAL.

{¶ 32} In his final assignment, Adams contends that the trial court erred when it overruled his motion for a mistrial based upon unsolicited testimony from the victim, M.P., during Adams's first trial. Specifically, during the first trial, M.P. testified that after she changed back into her own clothes after the assault, she sat down in Adams's living room and the two talked. M.P. testified that she told Adams that she had not wanted what happened between them. M.P. further testified that Adams responded that "it was ok, that he had other one night stands with other girls who started crying while they were having --." Tr. 103. Defense counsel immediately objected to M.P.'s testimony in this regard and requested a mistrial. It is undisputed that M.P.'s testimony was a surprise to the defense, since it had never been previously mentioned or provided in discovery.

{¶ 33} The record establishes that, during a discussion without the jury present after the objection by the defense, the State agreed with Adams that the testimony offered by M.P. was inadmissible as it qualified as testimony regarding his prior sexual conduct

under the Rape Shield Law pursuant to R.C. 2907.02(D). The parties also agreed that M.P.'s testimony was inadmissible because it was evidence of a prior bad act under Evid.R. 404(B), and no notice was given. Ultimately, the trial court denied Adams's motion for a mistrial, struck the subject testimony from the record, and gave the jury a limiting instruction.

{¶ 34} Initially, we note that we disagree with the parties' assertion that Adams's statement to M.P. constituted evidence of prior bad acts under Evid.R. 404(B). The statement attributed to Adams by M.P. that "it was ok, that he had other one night stands with other girls who started crying while they were having --" was not an admission of guilt regarding any prior unlawful sexual conduct. Rather, Adams only admitted that he had had prior consensual "one night stands" with other women who were ostensibly also upset that they had cheated on their significant others and/or acted impulsively. Nothing in Adams's statement can be understood to mean that he committed any nonconsensual sexual offenses. In our view, the statement attributed to Adams did not constitute evidence of a prior bad act pursuant to Evid.R. 404(B).

{¶ 35} "The granting or denial of a motion for mistrial rests in the sound discretion of the trial court and will not be disturbed on appeal absent an abuse of discretion." *State v. Treesh*, 90 Ohio St.3d 460, 480, 739 N.E.2d 749 (2001), citing Crim.R. 33; *State v. Sage*, 31 Ohio St.3d 173, 182, 510 N.E.2d 343 (1987). "This standard is based upon the notion that the trial court is in the best position to determine whether the circumstances of the case necessitate the declaration of a mistrial or whether other corrective measures are adequate." *State v. Oteng*, 10th Dist. Franklin No. 14AP-466, 2015-Ohio-1231, ¶ 26.

A reviewing court may not substitute its judgment for that of the trial court absent an abuse of discretion. *Id.*

{¶ 36} "A mistrial should not be ordered in a criminal case merely because some error or irregularity has intervened." *State v. Reynolds*, 49 Ohio App.3d 27, 33, 550 N.E.2d 490 (2d Dist.1988). "The granting of a mistrial is necessary only when a fair trial is no longer possible." *Treesh* at 480, citing *State v. Franklin*, 62 Ohio St.3d 118, 127, 580 N.E.2d 1 (1991). "To determine whether the defendant was deprived of a fair trial, we must determine whether, absent the improper remark[ ], the jury would have found the appellant guilty beyond a reasonable doubt." *State v. Maurer*, 15 Ohio St.3d 239, 267, 473 N.E.2d 768 (1984).

{¶ 37} We find that the trial court did not abuse its discretion when it overruled Adams's motion for mistrial. M.P.'s testimony regarding Adams's statement was a brief, isolated remark and was promptly followed by a curative instruction. For purposes of mistrial analysis, there is a presumption of the efficacy of curative instructions with regard to improper comments made by a witness or prosecutor. *State v. Simons*, 193 Ohio App.3d 784, 2011-Ohio-2071, 954 N.E.2d 176, ¶ 69 (2d Dist.). Here, the trial court overruled Adams's motion for mistrial and provided a curative instruction to the jury that it was to disregard any portion of M.P.'s testimony that discussed Adams's past sexual conduct, i.e. "one night stands"; the jury was not to consider that testimony for any purpose, not to discuss it, and not to consider it during deliberations. Furthermore, there is no evidence in the record to suggest that the jury failed to comply with the trial court's curative instruction.

{¶ 38} The record also reveals that the State was surprised by M.P.'s response and did not intentionally attempt to elicit a prejudicial response. In light of the trial court's decisive action in calling for a conference out of the hearing of the jury to discuss M.P.'s disclosure immediately after it occurred, as well as the court's curative instruction to the jury, we find that Adams did not suffer any prejudice as a result of the court's decision to overrule his motion for a mistrial.

{¶ 39} Adams third assignment of error is overruled.

{¶ 40} All of Adams's assignments of error having been overruled, the judgment of the trial court is affirmed.

. . . . . . . . . . . . .

TUCKER, P.J. and EPLEY, J., concur.

Copies sent to:

Marcy A. Vonderwell
Kate L. Bowling
Hon. Michael A. Buckwalter